UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE AYERS,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                       Case No. 4:05-CV-137

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security concluding that Plaintiff was entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act from February 9, 2002, through July 31, 2003, but not thereafter.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 44 years of age at the time of the ALJ's decision.  (Tr. 15).  He earned a General Educational Development (GED) diploma and worked previously as a machine operator and supervisor.  (Tr. 15, 53, 58).

Plaintiff applied for benefits on February 16, 2002, alleging that he had been disabled since February 9, 2002, due to lower back pain.  (Tr. 38-40, 52).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 25-37).  On March 9, 2004, Plaintiff appeared before ALJ Earl Witten, with testimony being offered by Plaintiff and vocational expert, Sandra Steele.  (Tr. 462-86).  In a written decision dated June 22, 2004, the ALJ determined that Plaintiff was disabled from February 9, 2002, through July 31, 2003, but not thereafter.  (Tr. 14-21).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-7).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. Plaintiff asserts that because he returned to his previous employment on January 27, 2005, the present appeal concerns only the period from August 1, 2003, through January 27, 2005.  (Dkt. #7).

## **MEDICAL HISTORY**

In early February 2002, Plaintiff began experiencing severe back pain (which radiated into his lower extremities) that did not respond to conservative treatment. (Tr. 86-150, 200-62, 385-98, 413-17, 440-46). Plaintiff was ultimately diagnosed with degenerative disc disease at L4-L5 and L5-S1 for which fusion surgery was recommended. *Id.*

On January 16, 2003, Plaintiff underwent spinal fusion surgery performed by Dr. Douglas Geiger. (Tr. 318-19). Specifically, Dr. Geiger performed the following procedures: (1) anterior lumbar interbody fusion at L4-L5 and L5-S1 with autogenous bone grafting cage placement; (2) placement of titanium mesh cages at L4-L5 and L5-S1; (3) posterior spinal fusion of L4 to S1 with instrumentation and iliac crest bone graft; and (4) placement of segmental instrumentation at L4 through S1. *Id.*

On February 26, 2003, Plaintiff was examined by physician's assistant Donna Huelke. (Tr. 191). Plaintiff exhibited a "normal" gait and was able to stand on his heels and toes. Straight leg raising was negative and Huelke observed no evidence of neurologic abnormality. X-rays of Plaintiff's spine revealed that the instrumentation used to fuse his spine was in "excellent position" and that the disc spaces were "well maintained." Plaintiff was instructed to comply with the following restrictions: (1) no bending at the waist; (2) no twisting; (3) no lifting more than 10 pounds; and (4) no lifting overhead or from the floor. Plaintiff was also instructed to not participate in physical therapy yet, but to "increase his walking and ride a stationary bike or swim." *Id.*

On April 9, 2003, Plaintiff was examined by Dr. Geiger. (Tr. 187). Plaintiff reported that he was "getting along quite well." He reported that he was experiencing "some intermittent numbness in [his] legs but generally has no complaints." Plaintiff moved "easily" and exhibited

symmetrical reflexes. The doctor observed no evidence of sensory or motor deficit and straight leg raising was negative. X-rays of Plaintiff's lumbar spine revealed "a solid fusion without evidence of loosening or evidence of fixation." Plaintiff was instructed to begin participating in physical therapy. *Id.*

Physical therapy treatment notes dated April 15, 2003, reveal that Plaintiff was experiencing back pain which ranged in severity from 4 to 8 (on a scale of 1-10). (Tr. 378). An examination revealed decreased lumbar lordosis and range of motion. Plaintiff walked with an antalgic gait and exhibited generalized weakness and deconditioning. *Id.*

Physical therapy treatment notes dated April 30, 2003, reveal that Plaintiff's back pain had reduced to a severity of 3 (on a scale of 1-10). (Tr. 381). The therapist observed that Plaintiff's trunk stability and endurance were "improving." The therapist further noted that while Plaintiff required another 12 visits to "get to functional level to return to work," Dr. Geiger had only approved one additional therapy session. *Id.*

On July 2, 2003, Plaintiff was examined by Dr. Geiger. (Tr. 434). Plaintiff reported that he was experiencing "minimal" pain and wanted to return to work. Straight leg raising was negative and Plaintiff moved "easily" through the examination room. Plaintiff's reflexes were symmetrical and he exhibited no sensory or motor deficiencies. X-rays revealed "a solid fusion" with "intact" instrumentation. Dr. Geiger concluded that Plaintiff had experienced "an excellent result" from surgery. The doctor released Plaintiff back to the care of Dr. Seth Egelston, with whom Plaintiff treated prior to undergoing surgery, to determine when (and under what conditions) Plaintiff would be able to return to work. *Id.*

On July 8, 2003, Plaintiff was examined by Dr. Egleston. (Tr. 399). Plaintiff reported that he was experiencing lower back pain. Dr. Egleston reported that Plaintiff was capable of performing work activities subject to the following restrictions: (1) limited bending; (2) no lifting more than five pounds; and (3) no working longer than four hours daily. *Id.* Dr. Egelston continued these limitations following an August 21, 2003 examination. (Tr. 401).

On August 22, 2003, Dr. Tom Lipps reported that Plaintiff was capable of working subject to the following restrictions: (1) he can work only four hours daily; (2) he can perform only limited repetitive bending; and (3) no lifting more than five pounds. (Tr. 376).

On December 16, 2003, Dr. Egelston reported that Plaintiff was restricted from lifting more than five pounds. (Tr. 403).

On February 26, 2004, Dr. Egleston reported that Plaintiff can work subject to the following limitations: (1) no lifting more than five pounds; and (2) no twisting, bending, or stooping. (Tr. 375).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease, status post anterior fusion; and (2) depression with anxiety. (Tr. 16). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that Plaintiff was disabled from February 9, 2002, through July 31, 2003. (Tr. 19-21). The ALJ further concluded, however, that as of August 1, 2003, while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. *Id.* Accordingly, the ALJ concluded that as of August 1, 2003, Plaintiff was not disabled as defined by the Social Security Act.

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**1. The ALJ's Decision is Not Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that from February 9, 2002, through July 31, 2003, Plaintiff was unable to perform even sedentary work. (Tr. 18). The ALJ further concluded, however, that as of August 1, 2003, Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can lift/carry 10 pounds occasionally and five pounds frequently; (2) during an 8-hour workday he can sit for six hours and walk for two hours; (3) he can only occasionally bend, twist, or turn; (4) he cannot crawl, squat, kneel, climb, or perform overhead work; (5) he cannot work around machinery or at unprotected heights; and (6) he can perform only simple, one-two step tasks. *Id.*

With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff experiences moderate restrictions in the activities of daily living, mild to moderate difficulty

maintaining social functioning, mild difficulty concentrating and completing tasks in a timely manner, and has experienced one or two episodes of decompensation. (Tr. 17).

The ALJ determined that as of August 1, 2003, Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

As previously noted, the ALJ determined that through July 31, 2003, Plaintiff was incapable of performing even sedentary work. With respect to the period beginning on August 1, 2003, the vocational expert testified that there existed approximately 17,700 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 482-84). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence

of 1,800 jobs which the claimant could perform satisfied the significance threshold). Accordingly, the ALJ concluded that Plaintiff was not disabled.

      a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

It is not disputed that Plaintiff suffers from a severe back impairment which, as the ALJ acknowledged, rendered Plaintiff incapable of performing even sedentary work for a significant period of time. Thus, the question is not whether Plaintiff's impairments were of disabling severity, but instead whether there exists substantial evidence to support the ALJ's conclusion that Plaintiff's condition sufficiently improved to permit him to later perform substantial gainful activity. The evidence of record fails to support the ALJ's conclusion in this regard.

The ALJ stated that "[a]s of August 1, 2003 the medical records establish that claimant's symptoms have decreased dramatically." (Tr. 17). While this may be true, the relevant question is not simply whether Plaintiff's condition improved, but instead whether there exists

substantial evidence to support the ALJ's RFC determination that as of August 1, 2003, Plaintiff regained the ability to perform substantial gainful activity.

The medical evidence fails to support the ALJ's conclusion. The ALJ placed great (arguably controlling) weight on the fact that Plaintiff's surgery appeared to have been successful in diminishing his pain and other symptoms. However, Plaintiff's treating physician, Dr. Egelston, consistently concluded that Plaintiff was limited to an extent significantly greater than that recognized by the ALJ. In fact, *none* of the medical professionals who examined Plaintiff reported findings which support the ALJ's RFC determination.

The basis for the ALJ's RFC determination appears to be treatment notes authored by Dr. Egelston following a July 20, 2003 examination of Plaintiff. (Tr. 400). Prior to this particular examination Dr. Egelston had concluded that Plaintiff was capable of performing work activities subject to the following restrictions: (1) limited bending; (2) no lifting more than five pounds; and (3) no working longer than four hours daily. (Tr. 399). During this examination, however, Plaintiff expressed his desire to return to work. (Tr. 400). As Plaintiff testified he was "desperate" to return to work, but could not do so unless his work restrictions were removed. (Tr. 400, 471). Dr. Egelston explained to Plaintiff the risks of returning to full-time work. (Tr. 400). Plaintiff assured Dr. Egelston that he "would have others there to help him [with] lifting." Accordingly, the doctor approved Plaintiff to return to work on a full-time basis subject to a 15 pound lifting restriction. *Id.*

However, when Plaintiff returned to Dr. Egelston on August 21, 2003, he reported that he was "having a difficult time." (Tr. 401). Accordingly, Dr. Egelston reinstituted his previous work restrictions: (1) limited bending; (2) no lifting more than five pounds; and (3) no working longer than four hours daily. *Id.* Dr. Egelston kept these (or similar) restrictions in place through

February 2004. (Tr. 375, 403). While this evidence suggests that Plaintiff was very motivated to return to work, it simply fails to support the ALJ's RFC determination. Accordingly, for the reasons herein discussed, the Court concludes that the ALJ's RFC determination is not supported by substantial evidence.

As indicated above, the vocational expert testified that there existed a significant number of jobs which Plaintiff can perform consistent with his RFC. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical question, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. Accordingly, the ALJ's conclusion that there exists a significant number of jobs which Plaintiff can perform despite his limitations, is supported by less than substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

b.  Evidence of Plaintiff's disability is not compelling

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

While the ALJ's decision fails to comply with the relevant legal standard, neither is the evidence of Plaintiff's disability compelling. While the medical evidence fails to support the

ALJ's conclusion that Plaintiff was capable of performing substantial gainful activity as of August 1, 2003, the evidence likewise fails to support Plaintiff's assertion that his back impairment rendered him incapable of working until January 27, 2005. Determining whether Plaintiff regained the ability (prior to January 27, 2005) to perform work which existed in significant numbers is a factual matter which this Court is not permitted to resolve. Instead, this matter must be remanded for the consideration of these (and any other relevant) issues.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 24, 2007                                  /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge